```
                    United States District Court
                      District of Massachusetts
_____
                              )
SAMUEL BARTLEY STEELE, BART    )
STEELE PUBLISHING and STEELE   )
RECORDZ,                       )
         Plaintiffs,           )   Civil Action No.
                               )   08-11727-NMG
     v.                        )
                               )
TURNER BROADCASTING SYSTEM,    )
INC., TIME WARNER CORPORATION, )
JON BONGIOVI (individually and )
d/b/a BON JOVI PUBLISHING),    )
RICHARD SAMBORA (individually  )
and d/b/a AGGRESSIVE MUSIC),   )
WILLIAM FALCONE (individually  )
and d/b/a PRETTY BLUE SONGS),  )
MAJOR LEAGUE BASEBALL          )
PROPERTIES, A&E TELEVISION     )
NETWORKS, AEG LIVE, MARK SHIMMEL)
MUSIC, UNIVERSAL POLYGRAM      )
INTERNATIONAL PUBLISHING, THE  )
BIGGER PICTURE CINEMA CO.,     )
BOSTON RED SOX, KOBALT MUSIC   )
PUBLISHING AMERICA, INC. and   )
ISLAND DEF JAM RECORDS         )
         Defendants.           )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiff, acting pro se, brings this case against numerous defendants for alleged copyright infringement. He alleges that a song he wrote about the Boston Red Sox was unlawfully copied and used to create an advertisement promoting Major League Baseball post-season telecasts.

-1-

I.  **Background**

    A.  **Factual Background**

The plaintiff, Samuel Bartley Steele ("Steele"), along with two "unincorporated business organizations," Steele Publishing Company and Steele Recordz (for convenience, all of the plaintiffs are hereinafter collectively referred to as "Steele" or "plaintiff"), are residents of Chelsea, Massachusetts. Steele is a songwriter and musician who asserts that, in 2004, he wrote a "love anthem" about the Boston Red Sox ("the Red Sox") entitled "Man I Really Love This Team" ("the Steele Song"). Not surprisingly, Steele's song gained popularity around Fenway Park, the Red Sox historic stadium, in the fall of 2004 as the team played toward its first World Series Championship in 86 years.

Steele's claim for copyright infringement arises from an advertisement produced and aired by the defendant Turner Broadcasting System, Inc. ("TBS") during the 2007 Major League Baseball ("MLB") post-season ("the TBS Promo"). The TBS Promo features a song by the popular band Bon Jovi entitled "I Love This Town" ("the Bon Jovi Song") along with baseball video footage. In addition to TBS, Steele's complaint names Bon Jovi front-man John Bongiovi and guitarist Richard Sambora as defendants. Also sued were William Falcone, Time Warner Corporation, Major League Baseball Properties, the Red Sox, A&E Television Networks, AEG Live, Mark Shimmel Music, Universal

Music Publishing ("Universal Music"), Universal Polygram International Publishing, The Bigger Picture Cinema Company, Island Def Jam Records ("Island Records"), Kobalt Music Publishing America, Inc. ("Kobalt"), Fox Broadcasting Company ("Fox"), Sony ATV Tunes LLC ("Sony") and Vector 2 LLC ("Vector").

Steele asserts that the Bon Jovi Song and the TBS Promo infringe his copyright. With respect to the TBS Promo, Steele contends that it was unlawfully derived from his work through a method called "temp tracking." According to Steele, that term refers to the use of a song as a template to create an audiovisual work which, in turn, is used to create a final soundtrack. Steele alleges that much of the visual portion of the TBS Promo is derived from his song and that the Bon Jovi Song was then based upon that Promo, the Steele Song or both.

B.  **Procedural History**

Steele filed his initial complaint alleging copyright infringement and violation of the Lanham Act on October 8, 2008. On January 30, 2009, Steele amended his complaint to add the Red Sox as a defendant and a claim pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A"). The amended complaint did not include a Lanham Act claim or some of the original defendants but, at Steele's urging and in light of his pro se status, this Court considered both complaints together in deciding the defendants' motions to dismiss.

On April 3, 2009, this Court issued a Memorandum and Order dismissing the claims brought under the Lanham Act and Chapter 93A and all claims against the defendants Universal Music, Fox, Sony and Vector.  Steele v. Turner Broadcasting Sys., Inc., 607 F. Supp. 2d 258 (D. Mass. 2009).  The Court declined to dismiss Steele's copyright infringement claims against the remaining defendants and instead permitted limited discovery to allow Steele to "gather and present evidence of substantial similarity" including expert analysis of his song and the alleged infringing works.  Id. at 265.  The Court indicated that, following such discovery, it would entertain motions for summary judgment on the issue of substantial similarity.

On June 10, 2009, the remaining defendants, with the exception of Kobalt and Island Records, moved for summary judgment.[1]  In support of their motion they included an expert report from musicologist Anthony Ricigliano ("the Ricigliano Report").  Kobalt separately moves for summary judgment incorporating by reference the arguments made by its co-defendants.

On July 17, 2009, Steele opposed the defendants' motions for summary judgment.  He also has submitted an (unsigned) report from a musicologist, reports from various other purported

---

[1] No attorney has appeared on behalf of Island Records and the docket reflects that service was never made on that defendant.

experts, affidavits from "ordinary listeners" who claim to detect similarity between the Steele Song and the alleged infringing works and an affidavit of his own. On July 30, the defendants (with the exception of Kobalt and Island Records and with leave of Court) submitted a reply memorandum. Although a hearing on the motion is scheduled for September 10, 2009, this Court concludes that a decision can be rendered based on the thorough submissions currently before it.

## II. Analysis

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the

material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.   Copyright Infringement**

To succeed on a claim for copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).  As part of the second prong, a plaintiff must prove that the copyrighted and alleged infringing works are "substantially similar."  Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005) (citation and internal quotation marks omitted).

In determining substantial similarity, courts apply the "ordinary observer," or, "in musical milieu, the ordinary

-6-

listener test." Id. (internal quotation marks omitted). A defendant's work is substantially similar to the copyrighted work only if

> an ordinary person of reasonable attentiveness would, upon listening to both, conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.

Id.

Importantly, for a plaintiff to succeed the substantial similarity must relate to original elements of the copyrighted work. See id. at 18-19 (citing Feist, 499 U.S. at 361). Thus, before examining the similarity between the works,

> a court must engage in dissection of the copyrighted work by separating its original, protected expressive elements from those aspects that are not copyrightable.

Id. Accordingly, "an overall impression of similarity may not be enough" if "such an impression flows from similarities as to elements that are not themselves copyrightable." Id. at 19.

Among the elements that must be dissected out are ideas and concepts which are not protected by copyright law. 17 U.S.C. § 102(b). Nor are common phrases or scene a faire, meaning "stock scenes or elements that necessarily flow from a common idea," protected. CMM Cable Rep, Inc. v. Ocean Coast Props, Inc., 97 F.3d 1504, 1522 n.25 (1st Cir. 1996) (citation omitted); Johnson, 409 F.3d at 24.

Although ordinarily an issue for the factfinder, substantial similarity (or lack thereof) can be decided by the Court as a

matter of law.  See Johnson, 409 F.3d at 18.  According to the First Circuit Court of Appeals:

> Summary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work.

Id. at 18, 25 (upholding grant of summary judgment based on lack of substantial similarity).

### C. Application

The defendants assert that Steele's copyright infringement claim fails as a matter of law because there is no substantial similarity between his song and the alleged infringing works.  In considering the issue this Court has reviewed the expert reports and other affidavits submitted by both sides.  It has also carefully listened to the Steele Song and the Bon Jovi Song and viewed both the original TBS Promo and the version provided by the plaintiff in which the audio has been replaced with the Steele Song.

#### 1. Musical Similarity

Applying the "ordinary listener" standard this Court detects no musical similarity between the Steele Song and the Bon Jovi Song.  The expert analyses by opposing musicologists support that conclusion.  The opinion of plaintiff's musicologist is particularly relevant because, on a motion for summary judgment, this Court considers the facts in the light most favorable to the

non-moving party. See id. at 19 (concentrating on the views of plaintiff's chosen expert).

Plaintiff has submitted an unsigned report from musicologist Alexander Stewart ("the Stewart Report") which states, in part:

> This case is not strong musicologically: Melody of "hook" has only one note in common (1). Three words in common, but not the most distinctive word, "team." Harmony is commonplace. Both tunes consist primarily of I, IV, and V chords - the most commonly used chords in harmony. Moreover, "Team" [the Steele Song] is a 12-bar blues. One of the most distinctive harmonic figures in "Team," the chromatic chord change (D-D#-E) at the end of the hook, is not found in "Town" [the Bon Jovi Song]. Hook in "Town" begins on the IV chord (progression IV V I); hook of "Team" begins on V (progression V IV I). Bon Jovi song has somewhat irregular structure: 5-bar "B section"; "Team" is regular 4- and 8-bar sections[.]

Not surprisingly, the Ricigliano Report (submitted by the defendants) reaches a similar conclusion, noting that the songs

> do not share any significant similarity and are not substantially similar in lyric content, melodic content (pitch series, rhythm or rhythmic patterns, melodic development and structure), or harmonic content . . . .

In response to such damaging testimony, Steele asserts that musicologists (including his own expert) are not helpful in this case because they are not qualified to compare the video evidence presented in the form of the TBS Promo. Nevertheless, this Court concludes, based upon the musicologist reports and its own review of the songs, that no reasonable jury applying the correct legal standard could find substantial similarity between the musical elements of the two works.

### 2. Lyrical Similarity

A comparison of the lyrics in the Steele Song and the Bon Jovi song also reveals no substantial similarity with respect to original elements. Before engaging in comparison, however, the Court must first dissect the lyrical elements of Steele's song that are not copyrightable. In this case, that turns out to be most, if not all, of the similarities.

For example, although both songs use the phrase "I love this . . ." in their title and chorus, common expressions and cliches are not copyrightable. See Johnson, 409 F.3d at 24 (phrase "You're the One for Me" too common to be copyrightable). As defendants point out, online databases reveal nearly 100 songs that use the phrase "I love this . . ." in some form in their title. Although plaintiff argues that none of those songs is about baseball, neither is the Bon Jovi Song.

The phrases "come on" and "here we go" are likewise too trite and common too warrant protection. See id. Another purported similarity, the fact that both songs rhyme "round" with "town," is also commonplace as evinced by the fact that it is found in the popular children's song "The Wheels on the Bus".

When those unprotected elements are filtered out, the Steele Song and Bon Jovi Song display little lyrical similarity, and certainly not the substantial similarity required to prove a claim of copyright infringement. As plaintiff's own musicologist

observes, the songs have "[o]nly three words in common ('I' 'love' 'this')." Moreover, the subject of the Steele Song "is clearly baseball and specifically the Red Sox" while the Bon Jovi song is about a town and "without the video, there would be no connection to baseball."

In an effort to show lyrical similarity, plaintiff relies on "reports" from Jonathan Yasuda ("the Yasuda Report"), a law student with an undergraduate degree in music, and Mark Ferraguto ("the Ferraguto Report"), a musicology PhD candidate.[2] Both reports identify purported similarities between the structure and rhyme scheme of the Steele Song and the Bon Jovi Song.

Even assuming those individuals are qualified to render opinions on the subject, their conclusions do not create a genuine issue of material fact concerning substantial similarity. A common rhyme scheme or structure does not qualify as original expression protectable under federal copyright law. See id. at 23 (holding that a particular harmonic progression "is a stereotypical building block of musical composition, [which] lacks originality"). Furthermore, considered as a whole, differences between the two songs (as recognized by plaintiff's own musicologist) overwhelmingly eclipse any similarity in structure and rhyme scheme. See id. at 18 (noting that "[t]he

---

[2] The Ferraguto Report is in the form of an email to the plaintiff.

substantial similarity requirement focuses holistically on the works in question"). Accordingly, even crediting the assertions of plaintiff's experts, no reasonable jury could conclude that the Bon Jovi Song is substantially similar to the original lyrical elements of the Steele Song.

### 3. The TBS Promo

Much of Steele's argument focuses not on similarity between the Bon Jovi Song and his own work (although he does maintain that the two are substantially similar) but, rather, on the TBS Promo, which features the Bon Jovi song along with baseball video footage and scenes from in and around major league ballparks. Steele asserts that the images in the TBS Promo bear a striking resemblance to the scenes described in his song and that, together with similarities between the two songs, the Promo conclusively demonstrates that his work was unlawfully copied.

According to Steele, his song was used as a template for the creation of the video portion of the TBS Promo. Through a process he calls "temp tracking," the defendants allegedly created the video based on the Steele Song and then replaced the audio with the Bon Jovi Song (which is based on the video, the Steele Song or both).

In an effort to show similarity (and that the TBS Promo was derived from his song) Steele has submitted a version of the TBS Promo in which the audio has been replaced with the Steele Song.

He maintains that in many places the lyrics of his song correspond to the images in the TBS Promo.  In particular, Steele notes the following similarities:

1) At the exact moment Steele sings "Word is out on Yawkey Way," the TBS Promo shows a Yawkey Way street sign;

2) when Steele mentions the Detroit Tigers the TBS Promo shows a Tiger's player rounding the bases;

3) when Steele sings "You got to keep believin', gotta stay tough" the Promo shows players "chest butting" and acting tough; and

4) when Steele exhorts fans to "Get up off your seats" the Promo shows fans standing and cheering.

Again, before conducting the substantial similarity analysis, the Court must dissect the unprotected elements from Steele's work.  Here, the Steele Song's references to Fenway Park and Yawkey Way are classic <u>scene a faire</u>; they are stock scenes that flow from the idea of baseball.  <u>CMM Cable Rep, Inc.</u>, 97 F.3d at 1522 n.25.  Steele does not enjoy a monopoly over the use of those images simply because he references them in a copyrighted song.  <u>See</u> <u>id.</u> (doctrine of <u>scene a faire</u> is "concerned with preventing a monopoly on commonplace ideas").

Furthermore, although the Steele Song does appear to match some of the images in the TBS Promo, it is inevitable that a song about baseball will at times correspond with a baseball promotional advertisement.  For example, there are over a dozen scenes in the TBS Promo that display a cheering crowd (at either a ballpark or a Bon Jovi concert).  Consequently, it is

-13-

unsurprising that one of those scenes parallels one of the four points in the Steele Song where he encourages fans to "Get up off your seats."

As the defendants point out, the number of places in which the TBS Promo corresponds to the lyrics of the Bon Jovi Song vastly outnumber any parallels with the Steele Song. More importantly, however, the issue is not whether the video portion of the TBS Promo is more similar to the Bon Jovi Song or the Steele Song but, rather, whether the TBS Promo is <u>substantially similar</u> to the original elements of the Steele Song. Because no reasonable jury could find substantial similarity between the two works, the defendants are entitled to summary judgment.

### 4. Other Issues

Steele raises a number of other arguments that do not change this Court's conclusion but are, nonetheless, worthy of addressing. First, to the extent that Steele maintains that the defendants stole his "marketing concept" of a baseball song that could be adapted to any team or city, such an idea or concept explicitly is unprotected by federal copyright law. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . [or] concept . . . .").

Second, Steele's effort to show a genuine issue of material fact by submitting affidavits from assorted "ordinary listeners," although understandable given his <u>pro se</u> status and the relevant

legal standard, is misguided for a number of reasons.  First, the "ordinary listeners" upon whom Steele asks the Court to rely are all his personal friends or acquaintances.  Second, there is no evidence that those ordinary listeners were "correctly applying the pertinent legal standards."  See Johnson, 409 F.3d at 18.  Most importantly, those affidavits present inadmissable lay opinion and therefore are not appropriate for consideration.  See Fed. R. Civ. P. 56(e)(1) (affidavits must "set out facts that would be admissible in evidence"); Fed. R. Evid. 701 (lay opinion is inadmissible unless it is "helpful" to the factfinder).

     Finally, Steele's assertions that the defendants violated his synchronization, or "synch," rights (by allegedly timing the display of images in the TBS Promo to his song) is also unpersuasive.  A synch right is the "right to record a copyrighted song in synchronization with [a] film or videotape, and is obtained separately from the right to perform the music." Broad. Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 33 n.23 (1979) (Stevens, J., dissenting).  Thus, synch rights are an additional right that a user must acquire when it seeks not only to perform the protected work but also to use it in timed-relation with an audiovisual work.  See ABKO Music, Inc. v. Stellar Records, Ind., 96 F.3d 60, 62 n.4 (2d Cir. 1996). Although Steele has submitted a report from a purported music and film expert that asserts that 96% of the video sequences in the TBS Promo are synchronized to the Steele Song's quarter-note

beat, intervals of time are not original expression protectable under federal copyright law. Accordingly, no reasonable juror could conclude that the TBS Promo violates plaintiff's synch rights.

In sum, because no reasonable juror applying the correct standards could find that the original elements of the Steele Song are substantially similar to the Bon Jovi Song or the TBS Promo, summary judgment will enter in favor of the defendants.

### ORDER

In accordance with the foregoing, the defendants' motions for summary judgment (Docket Nos. 92 and 98) are **ALLOWED**.

**So ordered.**                              /s/ Nathaniel M. Gorton
                                             Nathaniel M. Gorton
                                             United States District Judge

Dated August 19, 2009