United States District Court
District of Massachusetts

_____          )
SAMUEL BARTLEY STEELE, BART               )
STEELE PUBLISHING, STEELE                 )
RECORDZ,                                  )
         Plaintiffs,                      )    Civil Action No.
                                          )    08-11727-NMG
         v.                               )
                                          )
TURNER BROADCASTING SYSTEM,               )
INC.,                                     )
Et al,                                    )
         Defendants.                      )
_____          )
                                          )
                                          )
                                          )

MEMORANDUM & ORDER

GORTON, J.

     Plaintiff Samuel Bartley Steele ("Steele") brought this case
against numerous defendants for copyright infringement.  He
claimed that a song he wrote about the Boston Red Sox was
unlawfully copied and used to create a promotion for post-season
baseball telecasts.

I.   **Factual Background**

     Steele's claim for copyright infringement arose from an
advertisement produced and aired by the defendant Turner
Broadcasting System, Inc. ("TBS") during the 2007 Major League
Baseball ("MLB") post-season ("the TBS Promo").  The TBS Promo
features a song by the popular band Bon Jovi entitled "I Love

-1-

This Town" ("the Bon Jovi Song") along with baseball video footage.  In addition to TBS, Steele's complaint named Bon Jovi front-man John Bongiovi and guitarist Richard Sambora as defendants.  Also named in the amended complaint were William Falcone, Time Warner Corporation, Major League Baseball Properties, the Red Sox, A&E Television Networks, AEG Live, Mark Shimmel Music, Universal Music Publishing, Universal Polygram International Publishing, The Bigger Picture Cinema Co., Island Def Jam Records, Kobalt Music Publishing America, Inc., Fox Broadcasting Company, Sony ATV Tunes LLC and Vector 2 LLC ("Vector 2").

Steele asserts that the Bon Jovi Song and the TBS Promo infringe his copyright.  With respect to the TBS Promo, Steele contends that it was unlawfully derived from his work through a method called "temp tracking."  According to Steele, that term refers to the use of a song as a template to create an audiovisual work which, in turn, is used to create a final soundtrack.  According to Steele, much of the visual portion of the TBS Promo is derived from his song and the Bon Jovi Song was then based upon that Promo, the Steele Song or both.

II.  **Procedural History**

Steele filed his initial complaint pro se on October 8, 2008 ("Steele I").  On April 3, 2009, the Court dismissed his Lanham Act and Chapter 93A claims, as well as all claims against several defendants.  Steele v. Turner Broad. Sys., Inc., 607 F. Supp. 2d 258 (D. Mass. 2009).  The Court declined to dismiss the copyright infringement claims and instead permitted limited discovery related to those claims.  Id. at 265.  After that discovery, in a Memorandum and Order dated August 19, 2009, the Court granted summary judgment to the Defendants finding no substantial similarity between Steele's song and that of the Defendants. Steele v. Turner Broad. Sys., Inc., 646 F. Supp. 185 (D. Mass. 2009).  On October 13, 2009, the Court denied Steele's motion for reconsideration.  Steele then appealed to the First Circuit Court of Appeals this Court's orders allowing Defendants' motions to dismiss and for summary judgment and denying Steele's motion for reconsideration.  That appeal remains pending.

Steele has since hired an attorney and now moves for entry of default judgments against MLB Advanced Media, L.P. ("MLBAM") and Vector Management.  Those motions were filed 18 months after the filing of the amended complaint.  Steele explains that he did not move for entry of default judgment against MLBAM earlier because, as a pro se plaintiff, he was unfamiliar with the possibility of a default judgment and did not notice MLBAM's

-3-

failure to appear in the case.  His newly retained counsel was unaware of MLBAM's default until June 12, 2010, six days before he filed the motion for entry of default, when he was reviewing the district court docket and case file.  Steele's attorney states that he filed that motion as soon as he discovered the default but does not explain why he did not file the motion against Vector Management earlier.

On September 15, 2010, all of the Defendants named in the amended complaint moved for Rule 11 sanctions against the plaintiff based on Steele's filing of a motion for entry of default against Vector Management.  The Defendants served the motion for sanctions on Steele and his attorney on August 24, 2010, stating that the motion would be filed on or after September 15, 2010 if Steele did not withdraw the motion for entry of default against Vector Management.  Steele, therefore, was afforded the requisite 21 days to withdraw his motion. Instead, he opposed the Rule 11 motion in writing.

On September 21, 2010, the Defendants filed a second Rule 11 motion for sanctions against the plaintiff, this time based on Steele's filing of a motion for entry of default against MLBAM.

III. __Analysis__

A.   **Jurisdiction**

Vector Management and MLBAM were not parties to the Court's August 19, 2009 Memorandum and Order and, therefore, it is within this Court's jurisdiction to enter a default judgment against them, if warranted, regardless of the First Circuit's decision with respect to the August 19, 2009 Memorandum and Order.

B.   **Vector Management is Treated as a Party**

Steele named Vector Management in the caption of his original complaint but not in his amended complaint, in which he named Vector 2 instead.  An amended complaint normally supercedes the original complaint and the earlier complaint "is a dead letter and no longer performs any function in the case." Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008)(internal quotations omitted).  As a result, any defendants listed in the original complaint but not the amended complaint are considered to have been dismissed as parties to the lawsuit. See id.

Normally, therefore, Vector Management would not be considered a party to the lawsuit and plaintiff's motion for entry of default as to Vector Management would be denied as moot. In its Memorandum and Order of April 3, 2009, however, this Court held that, because of Steele's pro se status, the Court would read his original and amended complaints together.  Steele, 607

-5-

F. Supp. 2d at 262.  Thus, the Court proceeds on the basis that Vector Management is named as a defendant in a viable complaint.

### C.  Motion for Entry of Default

#### 1.  Standard for Entry of Default

Under Fed. R. Civ. P. 55(b)(2), a plaintiff may request that the Court enter a default judgment against a defendant who was served with process and failed to appear or otherwise defend the action.  The Court's decision on such a motion is discretionary, however, and default judgments are "ordinarily disfavored". Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  Courts should decide cases upon the merits "whenever reasonably possible."  Id.

In deciding whether to enter a default judgment, it is prudent for the Court to consider whether that judgment will subsequently be set aside, thus rendering the entry of default judgment futile.  The determination of whether to set aside an entry of default is case-specific and must "be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula."  KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003)("KPS"). The First Circuit has laid out a non-exhaustive list of factors that courts may consider when determining whether good cause exists to set aside a default judgment:

> (1) whether the default was willful; (2) whether
> setting it aside would prejudice the adversary; (3)

-6-

whether a meritorious defense is presented; (4) the
nature of the defendant's explanation for the default;
(5) the good faith of the parties; (6) the amount of
money involved; (7) the timing of the motion [to set
aside entry of default].

Id.

### 2.  Application

#### a.  Proper Service and Failure to Respond or Otherwise Defend

##### (1)  Vector Management

Steele's claims against Vector Management are based on his allegation that it was Bon Jovi's manager from 2005 until June 20, 2010. Vector Management's General Manager, Joel Hoffman, personally accepted service in this case on December 8, 2008 at 1607 17th Avenue S., Nashville, Tennessee. On the same day, Vector 2, a wholly owned subsidiary of Vector Management, filed an appearance and, in its corporate disclosure statement, informed Steele that he had incorrectly named Vector Management as a defendant. Vector Management allegedly told Steele that it had no connection to Bon Jovi and that the correct target for Steele's allegations was Vector 2 which had acted as a personal manager for Bon Jovi.

In his amended complaint, Steele removed Vector Management from the caption and pleadings and replaced it with "Vector 2 LLC". Vector Management does not deny that it has not appeared or otherwise defended against Steele's claims and therefore defaulted with respect to the original complaint. Technically,

Vector Management should have responded before the amended complaint was filed almost four months later.

### (2) **MLBAM**

MLB responds on behalf of MLBAM despite the fact that it maintains that they are separate entities.  MLB asserts that MLBAM cannot be defaulted because it was never served with process.  The docket indicates that, on November 17, 2008, Steele served a summons at MLBAM's headquarters, 75 Ninth Avenue, 5th Floor, New York, New York but the summons was addressed to "MLB Productions/MLB.com" and "Major League Baseball", not MLBAM.

It is unclear from the facts presented in the pleadings what the relationship is between MLB and MLBAM.  According to Steele, the name on the summons was correct because MLBAM owns, operates and does business as both MLB Productions and MLB.com.  Steele presents evidence that MLBAM is commonly referred to by other names such as "MLB.com" and "Major League Baseball" and argues that MLB and MLBAM are collaborating to shield MLBAM from this lawsuit.  Indeed, it is worth noting that MLB filed the opposition to Steele's motion to default MLBAM and yet claims that MLBAM is a separate legal entity.

MLB maintains that MLBAM was not served with process because MLBAM and MLB Productions are entirely separate entities.  MLB Properties, Inc. is a New York corporation and is among the defendants in whose favor summary judgment was granted by this

Court.  MLB Productions is a division of MLB Properties, Inc. and deals with video and audio production.  MLBAM is a Delaware limited partnership owned by MLB Media Holdings, L.P. and MLB Advanced Media, Inc.  MLBAM is responsible for MLB.com and various other internet activities of MLB clubs and entities.

An incorrect name on a summons does not necessarily invalidate proper service.  In fact, the "misnomer of a corporation in a summons is immaterial if it appears that the corporation could not have been, or was not, misled."  In re Pharm. Indus. Average Wholesale Price Litig., 307 F. Supp. 2d 190, 196 (D. Mass. 2004).  Thus, because the summons was served at MLBAM's headquarters and used a name that included "MLB.com", which MLB admits is an entity for which MLBAM is responsible, MLBAM was adequately served with process.  MLB does not deny that MLBAM failed to appear or otherwise defend.  It appears, therefore, that MLBAM did technically default, although it remains unclear why MLB has (figuratively) picked up its banner.

        **b.**    **Entry of Default Should be Denied Because it is Futile**

Even though the subject Defendants were properly served and did not respond or otherwise defend against Steele's claims, the Court will deny the motions for entry of a default because such a determination would be futile.  It would be futile because, based on the factors laid out in KPS, an entry of default would subsequently be set aside for good cause pursuant to Fed. R. Civ.

P. 55(c).

(1) **Factors 1, 4, 5: Whether the Default was Willful, The Nature of the Defendants' Explanation for the Default and The Good Faith of the Parties**

(a) **Vector Management**

The motion for entry of default was filed 18 months after the filing of the amended complaint from which Vector Management was omitted. Vector Management argues that a default judgment at this time would violate its due process rights because it was not named in the amended complaint. When a party is omitted from the complaint, it is entitled to conclude that it has no obligation to answer the complaint or defend against the lawsuit. See Connectu LLC, 522 F.3d at 91. Vector Management is entitled to such an assumption. It is not mentioned in the amended complaint and only after this Court's April 3, 2009 Memorandum and Order, holding that the original and amended complaints would be read together, could Vector Management have been expected to question its own status. On that same date, this Court dismissed all claims against Vector 2 and Steele did not thereafter suggest that any claims were still pending against Vector Management.

In the same Memorandum and Order, this Court held that the fact that Vector 2 was not mentioned anywhere in either complaint deprives it of clear notice of any allegations against it. Steele, 607 F. Supp. 2d at 263. The same is true for Vector Management, no mention of which is made in the text of either

-10-

complaint.  Steele contends that his eight months of correspondence with Vector Management before he filed suit put Vector Management on notice that it had to defend against such a suit but correspondence before the filing of a lawsuit does not constitute legal notice.  Thus, Vector Management's failure to respond or defend was understandable and was not done willfully or in bad faith.

### (b)   MLBAM

Even assuming that MLBAM was properly served, its failure to respond or defend is equally justified.  MLBAM is not listed in the caption of Steele's original or amended complaints.  The original complaint describes "Major League Baseball/MLB Productions" as a defendant.  In his amended complaint, Steele names "Major League Properties, Inc." and refers to MLBAM only as a subsidiary of MLB Properties.  That allegation is, without further explanation, insufficient to put MLBAM on notice that it must respond or defend itself in its own right.  Thus, because neither complaint refers to MLBAM in the caption or in substantive allegations, MLBAM was not required to respond or otherwise defend.

### (2)   Factors 2 and 3: Whether Setting Aside the Default Would Prejudice the Plaintiff and Whether a Meritorious Defense is Presented

Factors two and three weigh conclusively in favor of denying Steele's motions for entry of default because setting aside a

default judgment would not prejudice the plaintiff and the
Defendants have meritorious defenses.

A default judgment bars the defaulting party from denying
the factual allegations in the complaint.  <u>Bonilla</u> v. <u>Trebol</u>
<u>Motors Corp.</u>, 150 F.3d 77, 80 (1st Cir. 1998).  The defaulting
party can still prevail on appeal, however, by demonstrating
that, as matter of law, the facts as alleged fail to state a
claim upon which relief can be granted.  <u>See</u> <u>id.</u>  In its April 3,
2009 Memorandum and Order, this Court dismissed all claims
against Vector 2 because, although it was identified in the
caption of the amended complaint, no specific allegations were
made against it in either the original or amended complaint.
<u>Steele</u>, 607 F. Supp. 2d at 263.

Likewise, apart from the caption in the original complaint,
Vector Management is not mentioned in either complaint, nor is
MLBAM but for the oblique reference in the amended complaint to
its corporate relationship with MLB Properties.  Even if taken as
true, that allegation alone is insufficient to state a claim upon
which relief can be granted.  Thus, even if the motion for entry
of default were allowed, Steele's claims against Vector
Management and MLBAM would be dismissed for failure to state a
claim upon which relief can be granted.

Steele suggests that any deficiency in the amended complaint
was caused by the misconduct and fraud of defense counsel and

Vector Management.  That argument is unavailing because, regardless of the substitution of Vector 2 for Vector Management, the allegations against the former were insufficient to state a claim upon which relief can be granted.  <u>Steele</u>, 607 F. Supp. 2d at 263.

Furthermore, on August 19, 2009, this Court granted summary judgment to the remaining Defendants on the copyright infringement claims because there was no substantial similarity between Steele's song and the one used by the Defendants.  Consequently, even if Steele were allowed to proceed against Vector Management and MLBAM, issue preclusion (or collateral estoppel) would bar Steele from re-litigating the issue of substantial similarity.  Issue preclusion bars a party from re-litigating an issue of fact or law when that issue has been "actually litigated and resolved in a valid court determination essential to the prior judgment."  <u>Taylor</u> v. <u>Sturgell</u>, 553 U.S. 880, 128 S. Ct. 2161, 2171 (2008).

Here, the issue of substantial similarity was 1) actually litigated, 2) resolved in a valid court determination and 3) essential to the judgment on August 19, 2009.  <u>See</u> <u>Steele</u>, 607 F. Supp. 2d at 265.  Issue preclusion will undermine a plaintiff's claim even against defendants who were not parties to the first litigation.  <u>O'Neill</u> v. <u>Dell Publishing Co.</u>, 630 F.2d 685, 690 (1st Cir. 1980).  Accordingly, Steele does not have a legal basis

-13-

for recovery against Vector Management or MLBAM and entry of default would be futile.[1]

### (3)   Factor 5: The Good Faith of the Parties

Steele alleges that the Defendants are 1) colluding to protect MLBAM from the lawsuit, 2) have made a number of misrepresentations to the Court and 3) successfully intimidated an attorney who Steele sought to retain.  Steele also alleges that Vector Management misled him into mistakenly naming Vector 2 as a party-defendant and that the Defendants have not acted in good faith in connection with his motions for default.

Steele does not, however, explain how his allegations have any bearing on the Court's decision with respect to these motions and offers no evidence of bad faith on the part of the Defendants.  In sum, given the futility of an entry of default, the Court will deny Steele's motions to do so.

### 3.   Steele's Failure to Comply with Local Rule 7.1

MLB argues that the motion for entry of default should be denied because Steele failed to comply with Local Rule 7.1. Under Local Rule 7.1, counsel must confer with opposing counsel before filing a motion for entry of default.  D. Mass. R. 7.1(A)(2).  Failure to do so may result in sanctions.  <u>See,</u>

---

[1] Steele's claims against Vector Management and MLBAM may also be precluded under the doctrine of <u>res</u> <u>judicata</u> but, because this Court will dismiss these claims on two other grounds, the Court does not address that issue.

e.g., <u>Converse Inc.</u> v. <u>Reebok Intern. Ltd.</u>, 328 F. Supp. 2d 166, 171 (D. Mass. 2004)(imposing $15,000 in sanctions for failure to comply with Local Rule 7.1).  Steele maintains that MLB has failed to confer in good faith with him.  The Court agrees that prior consultation is an important precursor to motion practice but does not find the breach of that procedure in this case to be controlling.

> **4.   Vector Management's Request for Attorney's Fees, Costs and Expenses Incurred in Opposing the Motion for Entry of Default**

Vector Management requests that the Court order Steele's counsel to pay attorney's fees, costs and expenses incurred in opposing the motion for entry of default pursuant to 28 U.S.C. § 1927.  Under that statutory provision, the Court may award attorney's fees and costs to the adverse party if an attorney "so multiplies the proceedings in any case unreasonably and vexatiously".  It was, perhaps, unreasonable for counsel to file the motion for entry of default against Vector Management because, for the reasons explained above, an entry of default is clearly futile.  There is no evidence, however, that Steele filed the motion in bad faith or "vexatiously".  Thus, the Court declines to order Steele to reimburse Vector Management for its attorney's fees, costs and expenses incurred in opposing this motion on that basis.

**D.   Defendants' Motions for Sanctions**

The Defendants named in the amended complaint have moved for sanctions pursuant to Fed. R. Civ. P. 11(c)(2).  They seek sanctions against Steele and his attorney, Christopher A.D. Hunt, on the purported grounds that Steele's motions for entry of default against Vector Management and MLBAM are frivolous.  The Defendants also contend that Steele's motion with respect to MLBAM was filed to harass MLB Properties and the other Defendants.  They request that the Court order Steele and his counsel jointly and severally to pay a penalty to the Court and award the Defendants their reasonable attorneys' fees and costs.

Steele responded to the first motion for sanctions, arguing that he did not withdraw his motion for entry of default against Vector Management because the Defendants' counsel refused to provide any additional information about Vector 2's appearance in lieu of Vector Management.

Although, in retrospect, the filing of plaintiff's motions was ill-advised and perhaps unnecessary, the Court declines to find them so frivolous as to warrant the imposition of sanctions. Plaintiff and his counsel are, however, forewarned that any further motion practice in this regard will be looked upon askance.

## ORDER

In accordance with the foregoing, Steele's motions for entry of default (Docket Nos. 118 and 125) are **DENIED** and the Defendants' motions for sanctions (Docket Nos. 131 and 134) and request for attorney's fees and costs are **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 27, 2010